IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ENRIQUE GARCIA, Y48566, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 23-cv-3561-DWD |
| DAVID ALFONSO, ) | |
| ASHLEY O'NEAL, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Enrique Garcia, an inmate of the Illinois Department of Corrections (IDOC), brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Plaintiff alleged that the Defendants prevented him from accessing timely medical care for an Achilles injury before and after surgery. Defendants Dr. David Alfonso and Ashley O'Neal have filed a Motion for Summary Judgment (Doc. 35) on the issue of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Plaintiff filed a timely response. (Doc. 40). For reasons explained herein, Defendants' Motion is granted, and Plaintiff's claims are dismissed to the extent that he has failed to exhaust them. Claim 1 will proceed against Defendant Dr. David concerning pre-surgical care.

BACKGROUND

Plaintiff filed this lawsuit on November 2, 2023. (Doc. 1). Upon initial review, the Court allowed two claims to proceed:

> Count 1: Eighth Amendment deliberate indifference claim against Dr. David for delaying or denying needed care for Plaintiff's Achilles injury both before and after his surgery;
>
> Claim 2: Eighth Amendment deliberate indifference claim against Defendant O'Neal for failing to assist Plaintiff when he informed her that he was not receiving needed care.

(Doc. 5). The claim against Dr. David was premised on the notion that Dr. David delayed the initial comprehensive assessment of Plaintiff's injury and delayed his access to surgery. (Doc. 1 at 2-3). The claim against Dr. David was also premised on allegations that after surgery Dr. David discharged Plaintiff from the infirmary too soon, and when Plaintiff developed an infection, he refused to help in a timely fashion. (Doc. 1 at 3-4). The claim against O'Neal was premised on allegations that she refused to address the housing relocation issue, she refused Plaintiff's need for special athletic shoes, and that she would not intervene in the post-surgical care or infection issues with Dr. David. (Doc. 1 at 3-4).

The parties completed discovery on the exhaustion of administrative remedies, and in doing so they identified a single grievance relevant to the allegations that was fully exhausted (Doc. 36-1 at 12-16), and a second relevant grievance that was not exhausted at the final level of review. (Doc. 36-2 at 19-22).

## FINDINGS OF FACT

On March 24, 2023, Plaintiff grieved his Achilles injury and the lack of ongoing care. He wrote in full:

> On 2-11-2023 I sustained an injury suspected to be an Achilles tendon tear. On the same day I was seen by HCU staff and was issued a temporary splint, crutches, and bottom bunk and gallery permits. I was also placed on

> a medical lay in, I was given an x-ray on 2-14-2023 and the doctor examined these x-rays on 2-22-2023. As current medical standards are relevant tendon injuries can not be seen on x-rays. Which is why an M.R.I. was ordered. It has been over a month since the injury occurred, so because the medical staff isn't sure what or [how] bad my injury is without the M.R.I. I want to know what's taking so long? Everyday I have to crutch walk to the shower or bathroom, I am potentially aggravating a serious injury. The 8th and 14th amendments of the U.S. Constitution guarantees prisoners adequate medical care. Adequate medical care means timely medical care. The fact that HCU staff are not treating my injury because they don't even know what or how bad it is without a M.R.I. why should I have to suffer. Everyday I am in pain. I can not sleep because of the discomfort. I need to be given adequate timely medical treatment, an inmate must rely on prison authorities to treat his medical needs. […] My current injury meets all of these standards, I need to be given adequate medical treatment so I can prevent further aggravation to my current injury.

(Doc. 36-1 at 13-14).

The grievance was deemed an emergency by the Warden on March 28, 2023, but the grievance office did not prepare a response until May 5, 2023. (Doc. 36-1 at 13-15). The grievance response from Medical Grievance Administrator Arquilt indicated that medical staff immediately consulted with Dr. David the day of the injury, that Dr. David reviewed x-ray results, that he assessed the findings and directed a course of care and that he eventually submitted Plaintiff to collegial review for an MRI. (Doc. 36-1 at 11). The grievance response notes also indicated an appointment was made for an MRI and an orthopedic consultation was scheduled in the month of May 2023. (*Id.*).

Plaintiff lodged a second grievance on August 15, 2023, concerning Dr. David's timely provision of follow-up care for his surgical site. (Doc. 36-2 at 21-22). Specifically, he alleged that he had surgery on June 9, 2023, and that his stitches were removed in early July. He alleged that on July 13, 2023, Dr. David had him moved out of the healthcare

unit while his incision had not yet healed. He claims that he developed an infection, and that he had asked nurses and a nurse practitioner for assistance, but nothing was being done. He also alleged he missed a follow-up appointment with the surgeon. (*Id.*). The grievance was expedited as an emergency by the Warden, and it was reviewed at all levels at the prison by August 28, 2023, but Plaintiff never appealed it to the Administrative Review Board. (Doc. 36-2 at 19).

## Conclusions of Law

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to

proceed or to dismiss it for failure to exhaust. *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). The court is not required to conduct an evidentiary hearing if there is no genuine dispute of material fact, and the determination is purely legal. *See e.g.*, *Walker v. Harris*, 2021 WL 3287832 * 1 (S.D. Ill 2021); *Miller v. Wexford Health Source, Inc.*, 2017 WL 951399 *2 (S.D. Ill. 2017).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. 20 Ill. Admin. Code § 504.800, et seq. (2017). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. 20 Ill. Admin. Code § 504.840. If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance. *Id.*

If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the Administrative Review Board (ARB). 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days of the date of the CAO's decision. *Id.* The inmate must attach copies of the responses from the grievance officer and CAO to his appeal. *Id.* If an inmate is appealing a grievance that the CAO determined to be of an emergency nature, then the ARB shall expedite processing of the appeal. 20 ILL. ADMIN. CODE § 504.850(f).

B. Analysis

The parties agree that Plaintiff fully exhausted just one grievance about the allegations in this lawsuit—his March 24, 2023, grievance. The August 2023 grievance, which concerned Plaintiff's post-surgical needs, was not ever appealed to the ARB. Thus, the Court need only analyze the fully exhausted grievance.

Defendant Dr. David concedes that the March 24th grievance is sufficient to exhaust Claim 1 against him concerning the care he provided for Plaintiff's Achilles injury *prior* to surgery. However, he contends that the grievance is not sufficient to exhaust the portion of Plaintiff's allegations concerning post-operative care and his subsequent infection. Likewise, Defendant Ashley O'Neal contends that the grievance is not sufficient to exhaust any claims against her, because she was not named, and all the factual allegations against her in the complaint concerned post-operative issues.

Plaintiff argues that the grievance was sufficient under *Turley v. Rednour*, 729 F.3d 645 (7th Cir. 2013). He argues that because it alerted the prison to his Achilles injury, and

all allegations in his lawsuit stem from that same injury, then it should be considered a continuing violation.

The Defendants bear the ultimate burden of establishing that Plaintiff failed to exhaust his administrative remedies. The Court finds based on the grievance records tendered that the grievance process was available to Plaintiff, that he knew how to use it, and that he demonstrated the ability to use the process from start to finish. There is no contention in this case that Plaintiff's access to the process was hindered in any way. Instead, the primary contention is a legal dispute about the sufficiency of Plaintiff's grievance to exhaust his claims.

In *Turley*, the Seventh Circuit held that "prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable conduct is continuing." 729 F.3d at 650. Turley filed a grievance in February of 2009 about prison lockdowns, and he later filed a lawsuit about lockdowns throughout 2008 and 2009 all unified by a core prison policy. The Court found that Turley's complaints "centered around continuing prison policies, including allegedly illegal lockdowns, and one occurrence of notice from Turley was sufficient to give the prison a chance to correct the problems." *Id.* at 650. However, the *Turley* Court also noted that "[s]eparate complaints about particular incidents are only required if the underlying facts or the complaints are different." *Id.*

Prior to *Turley*, the Seventh Circuit found in *Mayo v. Snyder* that a generic grievance about a medical issue was not sufficient to exhaust claims about future issues with treatment once treatment was offered. 166 Fed. App'x 845 (7th Cir. 2006). Mayo suffered

chronic back pain. He filed an initial grievance about his pain in December of 2000. He eventually filed a lawsuit in February of 2001, at which time he included allegations against 3 nurses who saw him after his original grievance had been filed and who provided various methods of treatment he disputed. The Court held, "[a]lthough we have held that a grievance need only 'alert the prison to the nature of the wrong for which redress is sought,' in no way could Mayo's December 2 grievance be construed to object to medical treatment he would subsequently receive."

After *Turley*, the Seventh Circuit has revisited the applicability of the continuing violation theory for grievances in multiple cases. In *Schillinger v. Kiley*, the Seventh Circuit found that an inmate grievance about the lack of guards on the range during an attack by a fellow inmate and about the guards' slow response time to the attack was not sufficient to exhaust a claim about an earlier failure to protect. 954 F.3d 990, 995-96 (7th Cir. 2020). In reaching this conclusion, the *Schillinger* Court noted that the grievance did not mention the defendants named in the lawsuit, it did not mention Plaintiff's specific assailant, and it did not reference any attack or threat prior to the issues discussed—the lack of guards and a slow response. As such, the Court reasoned the grievance did not satisfy the requirement explained in *Turley* that a grievance give notice and a chance to fix a problem.

Likewise, in *Bowers v. Dart,* the Seventh Circuit held that a grievance about a single employee failing to come to an inmate's aid during an attack was not the same as a later allegation in litigation that jail employees failed to predict a risk to the inmate's safety and failed to protect him. 1 F.4th 513, 517-18 (7th Cir. 2021). The Court reasoned that

claims cannot be considered exhausted where the allegations presented in the grievance process are "substantively distinct from the allegations in [the] federal complaint." *Id.* at 517. And in *Jackson v. Esser*, 105 F.4th 948 (7th Cir. June 26, 2024), the Seventh Circuit held that grievances about the lack of water in a cell were insufficient to cover other issues with the cell, such as the presence of feces or chemical agents. The *Jackson* Court emphasized that the issues discussed in the grievance depended on other facts than the allegations in the lawsuit about feces and chemical agents.

      The Court did not find a published Seventh Circuit case on Plaintiff's precise issue of whether a grievance about an injury can exhaust claims about pre- and post-surgical treatment after *Turley*, but unpublished decisions and decisions from other lower courts provide useful analogies. In *Barrow v. Wexford Health Sources, Inc.*, the Seventh Circuit found that an inmate did not exhaust allegations against a prison medical director for contributing to surgical delays because the doctor was not named in any grievance submitted before the lawsuit, and the doctor's actions were specific instances of contributing to delays in surgical treatment. 793 Fed. App'x 420, 423 (7th Cir. 2019). The *Barrow* Court contrasted the specific instances of delayed care that had not been grieved from *Turley*, which involved a single ongoing systemic issue. And in *Tackett v. Jess*, the Seventh Circuit found that the continuing violation doctrine did not apply to a plaintiff's medical issues from a foot injury that spanned multiple prisons. 853 Fed. App'x 11 (7th Cir. 2021). The *Tackett* Court noted that the inmate's grievances focused on a delay in surgery and post-surgery medication deprivation, but only generically referenced later issues about continued pain at a second prison. "Tackett's pain was ongoing, but the

failure to treat it adequately and to schedule appointments were discrete acts, not a single course of conduct that continued even after his transfer to a new institution. *Id.* at *13.

In *Love v. Hoffman*, a court noted that "delays in assessing his injury, scheduling surgery, or treating his presurgical problems are simply different types of misconduct than defendants' failure to treat his postsurgical condition." 2019 WL 529935 at * 2 (W.D. Wisc. Feb. 11, 2019). And in *Ruiz v. Butalid*, a court in this District found that an inmate's grievance about ongoing poor healthcare, a doctor not dressing wounds, and Wexford's lack of professionalism, was not sufficient to exhaust a later lawsuit about the inmate's experience with cardiac arrest or allegations that Wexford cut costs. *Ruiz v. Butalid*, 2021 WL 3376997 (S.D. Ill. Jul. 12, 2021), *affm'd in Ruiz v. Butalid*, 2022 WL 16833521 (7th Cir. 2022).

By contrast, in the context of medical claims, some courts have found that single grievances are sufficient to address ongoing chronic medical issues. For example, in *Lowe v. Marthakis*, 2024 WL 3088301 at *3 (N.D. Ind. June 18, 2024) a court concluded that a January 2023 grievance about ongoing gastritis and ulcerative colitis treatment by a single doctor over the past ten years was sufficient to exhaust a claim about that treatment because the underlying facts about the inadequate treatment had not changed over time. And in *Montano v. Obaisi as an Independent Executor of the Estate of Obaisi*, 2024 WL 2892861 at * 6-7, a court found that grievances about pain with urinating and severe groin pain were sufficient to exhaust claims both about prostate issues and an inguinal hernia. In *Montano*, the inmate filed grievances complaining explicitly about prostate issues and pain while urinating, but he did not explicitly complain about a hernia. He did not learn

he had a hernia until he was finally sent to a specialist after his grievances had all been filed. The court reasoned that Plaintiff's grievances were sufficient even if he did not explicitly mention a hernia because the grievances explicitly discussed all the painful conditions associated with the hernia issue which gave the prison a chance to address his problem. The *Montano* court concluded Plaintiff did not need to later file a new grievance after receiving a proper diagnosis.

In *Anderson v. Larry*, a court explained a two-part test to determine if the *Turley* continuing violation theory applies:

> First, the grievance must complain of a continuing objectionable condition. *See Turley*, 729 F.3d at 650; *see also Burt v. Berner*, No. 13-CV-794-NJR-DGW, 2015 WL 1740044, at *3 (S.D. Ill. Apr. 14, 2015) (explaining "that a previously submitted grievance will suffice to exhaust remedies for future events only if the prisoner remained in the same situation"). Second, this continuing objectionable condition must form the basis of the plaintiff's claim against the defendant in litigation. *See Henderson v. Jess*, No. 21-1585, 2022 WL 1831133, at *3 (7th Cir. June 3, 2022) ("[F]or the continuous-violation doctrine to apply, the grievances on file must afford the prison notice of the precise claim at issue in the later lawsuit." (*citing Turley*, 729 F.3d at 650)); *Venson v. Gregson*, No. 3:18-CV-2185-MAB, 2021 WL 2948817, at *8–9 (S.D. Ill. July 14, 2021) (two grievances that predated the defendants' misconduct could not exhaust the plaintiff's claim against them under the continuing violation doctrine because the grievances complained of conduct that was "of a different flavor" and "factually distinct" from the alleged misconduct underlying the claim); *Smith v. Martin*, No. 14-cv-429-wmc, 2016 WL 3830565, at *5 (W.D. Wis. July 12, 2016) ("[A] grievance will suffice to exhaust remedies for an ongoing issue only if the grievance actually related to the actions, policies, or procedures at issue in the case.").

2022 WL 17357434 * 12 (N.D. Ill. Dec. 1, 2022).

In the present case, the Court finds that Plaintiff's allegations against Dr. David prior to the Achilles surgery are factually distinct from the issues that arose after the surgery. Plaintiff's March 24th emergency grievance (and the only fully exhausted

grievance) alerted the prison that the doctor and medical staff's assessment of Plaintiff's injury was not satisfactory and that it left Plaintiff to suffer in pain from his injury. Plaintiff sought further testing, such as an MRI. The Warden deemed the grievance an emergency and while it was being processed the grievance staff was made aware that after filing the grievance Plaintiff had an MRI and an orthopedic consultation. At that juncture, Plaintiff's care was on track, he received the primary relief he requested (and MRI), and in fact he received surgery in June of 2023.

Plaintiff's post-surgical care problems with Dr. David stand as an entirely different set of issues reliant on different facts. The prison could not have been alerted by the March 2023 grievance that eventually Plaintiff's post-surgical care might go awry, and he might contract an infection. *See e.g.*, *Love v. Hoffman*, 2019 WL 529935 (pre- and post-surgical medical needs are different for purposes of *Turley* and a continuing violation); *see also Tackett*, 853 Fed. App'x at * 13 (separate issues related to ongoing care or chronic pain are distinct for exhaustion purposes). The point of a grievance is to alert the prison to an issue with a chance to correct a problem, but the prison had no chance to correct a problem with post-surgical care when they were not aware that it was a problem. *Jackson*, 105 F.4th at 960-61 (finding that an inmate failed to exhaust claims about issues or defendants not mentioned in a grievance where the grievance had one very clearly defined issue and individual). Given the distinction between the issue discussed in the March 2023 grievance, and the issues about post-surgical care raised in the complaint, the Court finds that Plaintiff's grievance was not sufficient to exhaust his post-surgical care claims against Dr. David.

Turning to Defendant O'Neal, she was not named in the exhausted grievance, but an explicit naming of a defendant is not always necessary to adequately exhaust claims. *See e.g.*, *Jackson*, 105 F.4th at 959-60 (nothing in the PLRA explicitly requires that all defendants be identified by name in a grievance). Instead, the contents of a grievance must give some identifying information about accused individuals so that the prison can investigate and resolve an issue. *Id.* Plaintiff contends that because he discussed healthcare unit staff as a whole in his March 24th grievance, he sufficiently identified O'Neal.

Setting aside the naming issue for a minute, Plaintiff's allegations in the complaint were all directed towards O'Neal's actions post-surgery. He faulted O'Neal for failing to help him when Dr. David relocated him to the general population and out of the infirmary, he faulted O'Neal for failing to allow him to have needed athletic shoes, and he faulted O'Neal for failing to intervene when Dr. David was delaying pain medication and/or care his infection. These events clearly fall after the surgery and are not like the issues described in the exhausted grievance.

Plaintiff attempts to bridge the gap by referring to the Court's order of initial review, which stated in general terms in the analysis section that Claims 1 and 2 were about O'Neal and David's care before and after surgery. (Doc. 5 at 4). Plaintiff attempts to capitalize on this use of language by supplying an affidavit in support of his response to summary judgment wherein he alleges,

> I spoke to RN Ashley O'Neil and other HCU staff and nurses personally during the month of March 2023 and before filing my March 24, 2023 grievance #2023-3-136E asking for assistance because I was not receiving

> needed care and was in pain and suffering when I finally received an MRI after the Warden intervened, which then led to my June 9, 2023 surgery, after my surgery I continued to not receive needed care from the HCU at Shawnee CC and spoke to Ms. O'Neil again on several occasions and she still would not assist me. As a result, my surgical wound became infected with Staph.

(Doc. 40 at 21). The problem with this affidavit is that it presents an improper attempt to expand the factual allegations in the complaint, but an exhibit in opposition to summary judgment is not a proper way to alter the operative claims.

Plaintiff's original complaint (Doc. 1) clearly and unequivocally spoke about O'Neal's involvement *after* his surgery. His original March 24, 2023, grievance is not sufficient to exhaust claims about his post-surgical care. The issues presented in the grievance about the need for an MRI and timely care are factually different from the post-surgery issues such as his housing location, his need for athletic shoes, and his infection. As such, the Court concludes that regardless of whether O'Neal was named in the March 24th grievance, that grievance was not sufficient to exhaust claims against her.

The conclusion that Plaintiff's March 24th grievance was not sufficient to exhaust post-surgical claims is bolstered by the fact that Plaintiff initiated and pursued a second emergency grievance about the post-surgical issues at all levels of review at the prison. This suggests that Plaintiff himself believed the issues were distinct, and that the care needed was different in March of 2023 than it was later in June or July of 2023. Ultimately, Plaintiff failed to exhaust this grievance when he did not transmit it to the ARB for the final level of review.

In sum, the Court finds that Plaintiff's March 2023 grievance is sufficient to exhaust his claims against Dr. David about pre-surgical care, but it is insufficient to exhaust post-surgical care claims against Dr. David or Ashley O'Neal. As such, the Court will grant the Defendants' Motion for Summary Judgment. Claim 1 is dismissed without prejudice in part as to the post-surgical care, and Claim 2 is dismissed without prejudice in full. This resolves all allegations against O'Neal, so she will be terminated and judgment in her favor will follow at the close of this case. Dr. David shall remain solely on the pre-surgery aspect of Claim 1.

## DISPOSITION

Defendants' Motion for Summary Judgment on the issue of exhaustion (Doc. 35) is **GRANTED**. **Claim 1** is **dismissed without prejudice in PART** as to the post-surgical care by Dr. David, but it shall continue as to the pre-surgical care by Dr. David. **Claim 2 is dismissed without prejudice** in full. The Clerk of Court is **DIRECTED** to **TERMINATE** Defendant Ashley O'Neal immediately. The Clerk of Court is **DIRECTED** to enter judgment in Defendant O'Neal's favor.

Claim 1 shall proceed to merits discovery on Dr. David's pre-surgical care, a merits discovery schedule will follow.

**IT IS SO ORDERED.**

Dated: October 18, 2024

DAVID W. DUGAN
United States District Judge